## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MURPHY MEDICAL ASSOCIATES, LLC, *et al.*, | ) ) | 3:22-CV-00059 (SVN) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMBLEMHEALTH, INC., *et al*., | ) | November 25, 2025 |
| Defendants. | ) | |

## RULING ON DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Sarala V. Nagala, United States District Judge.

In this insurance-related action, Plaintiffs Murphy Medical Associates, LLC ("MMA"), Diagnostic and Medical Specialists of Greenwich, LLC ("DMSOG"), and Dr. Steven Murphy (together, "Plaintiffs") allege that they provided COVID-19-related medical services for the insureds of Defendants EmblemHealth, Inc., Group Health Incorporated ("GHI"), and ConnectiCare, Inc. (together, "Defendants"), for which they have not received adequate compensation. Following dismissal of their original complaint, Plaintiffs' amended complaint brings claims under the Employee Retirement Income Security Act ("ERISA") and for breach of contract under state law. Defendants have moved to dismiss the amended complaint in its entirety for failure to state a claim. For the reasons set forth below, Defendants' motion to dismiss Plaintiffs' amended complaint is GRANTED.

## I.    FACTUAL BACKGROUND

The amended complaint contains the following relevant allegations, which are accepted as true for the purpose of this ruling. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The parties'

familiarity with Plaintiffs' allegations is presumed, and the Court does not repeat their full scope here. Rather, the Court sets forth only allegations relevant to the present motion.

Dr. Murphy, a board-certified internist, founded MMA to provide preventative and general health services, as well as acute primary care, to adults and adolescents across Connecticut. Am. Compl., ECF No. 36 ¶ 29. Beginning in the spring of 2020, in response to the COVID-19 pandemic, Plaintiffs set up COVID-19 testing spots across Connecticut and New York and began providing drive and/or walk-through COVID-19 testing. *Id.* ¶¶ 31–34, 48. Since March 9, 2020, Plaintiffs have "provided COVID-19 testing and/or related services to over 35,000 patients and engaged in over 85,000 unique encounters[.]" *Id.* ¶ 35.

Plaintiffs utilized nasopharyngeal swabs to collect patient samples for testing. *Id.* ¶ 36. These samples were sent either to Plaintiffs' physician office laboratory in Stamford, Connecticut for internal processing, or to a third-party laboratory. *Id.* ¶¶ 36–37. At Plaintiffs' laboratory, the samples were analyzed using a new BioFire machine, which "allows healthcare providers to quickly identify patients with common respiratory pathogens, as well as those with COVID-19, using one simple test." *Id.* ¶ 40. Using that machine, Plaintiffs could test each swab for twenty-two respiratory pathogens, including the virus that causes COVID-19. *Id.* ¶ 41.

Plaintiffs allege that some of the patients to whom they provided COVID-19 testing were "enrollees of health plans sponsored or administered" by Defendants. *Id.* ¶ 49. During the relevant period, Plaintiffs were considered out-of-network providers for the plans Defendants sponsored or administered. *Id.* ¶ 52. Plaintiffs allege that as out-of-network providers, the only way they could determine whether a specific patient was an enrollee of health plans sponsored or administered by Defendants was if a patient provided that information. *Id.* ¶ 54. Enrollees could provide Plaintiffs this information "orally, electronically, or in writing," or "by providing . . . a copy of their

insurance cards." *Id.* ¶ 55.  Plaintiffs allege that enrollees' insurance cards provide "some, but not all, information regarding the precise identity and type of health plan," for each enrollee.  *Id.* ¶ 56; *see also* EmblemHealth Manual, Ex. B, ECF No. 36-2 at 1–15 (discussing membership identification cards).

Further, according to Plaintiffs, most enrollees "are unaware of whether their health plan is governed by ERISA," and thus "the only way to be sure that a health plan is governed by ERISA is to obtain that information directly from Defendants."  Am. Compl. ¶¶ 59–60.  To date, Defendants have allegedly refused to disclose the ERISA plan status of its enrollees.  *Id.* ¶ 61; *see also* Email Commc'ns, Ex. C, ECF No. 36-3 at 1.  Plaintiffs' request for this information was made ten days before their amended complaint was due, and Defendants disputed that they had any legal obligation to provide the information.  Email Commc'ns at 1.

Nevertheless, Plaintiffs assert—based on public information and a settlement agreement between EmblemHealth and the United States Secretary of Labor—that a number of Defendants' sponsored or administered plans are governed by ERISA.  Am. Compl. ¶¶ 63–70; EmblemHealth Settlement, Ex. F, ECF No. 36-6 at 1–23.  Plaintiffs also allege that Defendants sponsor or administer a number of non-ERISA governed individual state and family health plans and group health plans for businesses.  Am. Compl. ¶¶ 71–76.  Alternatively, Plaintiffs contend that because "the provisions of the [Families First Coronavirus Response Act] and the [Coronavirus Aid, Relief, and Economic Security Act] regarding coverage and reimbursement for COVID-19 testing and related services" were incorporated into the health plans administered or sponsored by Defendants, Defendants were "obligated" to "cover COVID-19 tests and related services provided by Plaintiffs," regardless of the terms of any individual plan or their out-of-network status.  *Id.* ¶¶ 108–109.

3

Plaintiffs allege that there are more than five thousand claims at issue in this case across the three Defendants. *Id.* ¶¶ 83–91; *see also* EmblemHealth Claims Tracker, Ex. G, ECF No. 36-7 at 1–11; ConnectiCare Claims Tracker, Ex. H, ECF No. 36-8 at 1–68; GHI Medical Claims Tracker, Ex. I, ECF No. 36-9 at 1–3. Each of these trackers lists the date of the medical service, the service provided, the particular facility that provided the service, the patient account number, the claim number and the amount paid for each claim. *See e.g.*, EmblemHealth Claims Tracker at 1; ConnectiCare Claims Tracker at 1; GHI Medical Claims Tracker at 1. Plaintiffs claim that Defendants either reimbursed them "nothing for the covered COVID-19 testing and related services, or reimbursed Plaintiffs an amount below Plaintiffs' posted cash price or, where applicable, what Plaintiff[s] believed was the appropriate usual, customary, and reasonable rate for the services." Am. Compl. ¶ 123.

Plaintiffs allege that each patient, before receiving treatment, executed an agreement which purports to assign to Plaintiff DMSOG and non-party NSMA[1] "all money to which [patient is] entitled for medical expenses related to the services performed from time to time by DMSOG/NSMA, but not to exceed [patient's] indebtedness to DMSOG/NSMA." Sample Assignments, Ex. J, ECF No. 36-10 at 1; *see also* Am. Compl. ¶¶ 96–99. But, given the "voluminous number of patients at issue in this lawsuit," Plaintiffs have only attached a representative sample of seven executed assignment agreements. Am. Compl. ¶ 99; Sample Assignments at 1–7.

Finally, Plaintiffs allege they have exhausted their administrative remedies as to all claims at issue. Am. Compl. ¶ 139. Plaintiffs also assert that they have timely pursued the appeal of any unpaid claims at issue. *Id.* ¶¶ 121–139. While some appeal procedures were clear, others "failed

---

[1] Although it is not defined in the amended complaint, "NSMA" appears to reference North Stamford Medical Associates, LLC, which is owned by Dr. Murphy. *See* Murphy Aff., ECF No. 58-1, ¶ 2.

to provide guidance as to appeal time limits and procedures," which forced Plaintiffs to "reach out to Defendants, using contact information on insurance cards, to obtain information as to appeal time limits and procedures." *Id.* ¶¶ 126, 128. Plaintiffs further allege that, in the event any claims were untimely pursued or appealed, "in virtually all cases timely filing requirements were suspended, extended, or tolled through actions of federal or state agencies." *Id.* ¶¶ 133, 136. As such, Plaintiffs claim to have fully exhausted their administrative remedies. *Id.* ¶ 139. And, regardless of whether Plaintiffs have exhausted their remedies, they contend exhaustion should be excused here because Defendants have "regularly, consistently, and routinely issue[d] blanket denials of [Plaintiffs'] COVID-19 testing and related services medical reimbursement claims[.]" *Id.* ¶ 141.

Plaintiffs commenced this action on January 12, 2022. Compl., ECF No. 1. Defendants moved to dismiss the initial complaint, which this Court granted in full (Haight, J.). *See Murphy Med. Assocs., LLC v. EmblemHealth, Inc.*, No. 3:22-CV-59 (CSH), 2024 WL 4388305 (D. Conn. Oct. 3, 2024) ("MTD Ruling"). In granting Defendants' motion to dismiss, the Court granted Plaintiffs leave to amend their ERISA claim and refused to exercise supplemental jurisdiction over the state law claims, given its dismissal of the federal cause of action. *Id.* at *17. Plaintiffs then proceeded to file their amended complaint. After Defendants moved to dismiss the amended complaint, *see* ECF No. 47, the case was transferred to the undersigned. *See* Order of Transfer, ECF No. 49.[2]

---

[2] While Defendants have requested oral argument on their motion to dismiss, the Court proceeds to rule on it without holding oral argument, in the interest of an efficient and expeditious resolution of this action, as it has the authority to do. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("district courts have the inherent authority to manage their dockets . . . with a view toward the efficient and expedient resolution of cases").

## II.    LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted.  When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id.*  In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotations omitted), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

III.    **DISCUSSION**

 A.  Count One:  ERISA Claim

 Plaintiffs allege that they, by operation of the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") or, in the alternative, by explicit assignment, are beneficiaries with standing to pursue their patients' claims under ERISA.  Because only Plaintiff DMSOG could potentially have standing under ERISA—but in any event, Plaintiffs have not provided sufficient detail concerning the various provisions of the plans at issue to determine the plausibility of their claims—Defendants' motion to dismiss is granted with respect to Plaintiffs' ERISA claim.

  *1.  Standing*

 As a threshold issue, the Court first addresses Plaintiffs' standing to bring claims on behalf of their patients under ERISA.

 ERISA is a federal law designed, in part, to govern certain health insurance plans.  ERISA protects the "interests of participants in employee benefit plans . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts . . . ." 29 U.S.C. § 1001(b).  Section 502(a)(1)(B) of ERISA establishes a private right of action for a "participant or beneficiary," as defined under the statute, to bring a civil suit to recover plan benefits.  29 U.S.C. § 1132(a)(1)(B).

 Plaintiffs allege that, because the FFCRA and the CARES Act "modified the terms of ERISA health plans" to provide direct reimbursement of COVID-19 healthcare costs, they are now direct plan beneficiaries negating any assignment requirement.  Pls.' Opp'n, ECF No. 58 at 8–9. In the alternative, Plaintiffs argue the assignment language they have provided is sufficient to convey ERISA standing on all three Plaintiffs.  *Id.* at 12–14.  Because Plaintiffs' FFCRA and

CARES Act argument is merely a recycling of their previously rejected alternative standing argument and because the assignment language refers solely to DMSOG, Defendants' motion to dismiss is granted as to Plaintiffs MMA and Dr. Murphy, with respect to Count One.

Generally, healthcare providers are not beneficiaries or participants as defined under ERISA. *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257–58 (2d Cir. 2015). However, the Second Circuit has created a "narrow exception" to grant standing "to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care." *Murphy Med. Assocs., LLC v. Yale Univ.*, 120 F.4th 1107, 1113 (2d Cir. 2024) (quoting *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017)). This Circuit has emphasized that there must not only be an assignment of a claim, but a "*valid* assignment," even where a provider has "a direct stake in the outcome of the litigation." *McCulloch Orthopaedic*, 857 F.3d at 148 (citation omitted); *see also Pro. Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 40 (2d Cir. 2017) (summary order) ("To proceed in the shoes of a beneficiary, the assignee must show that there is a valid assignment that comports with the terms of the benefits plan."). Importantly, "[n]ot all ERISA assignments convey the same rights." *Rojas*, 793 F.3d at 258.

Plaintiffs first argue that ERISA's standing requirement has been negated by the FFCRA and CARES Act, which they contend modified health plans like those that Defendants offer to "mandate coverage at no costs to patients and direct reimbursement to providers of COVID-19 testing and related services, even if the services were rendered by out-of-network providers." Pls.' Opp'n at 8–9. According to Plaintiffs, this modification allegedly "makes [Plaintiffs] a plan beneficiary," and eliminates the need for an assignment of rights to grant standing. *Id.* at 9. The Court disagrees.

Plaintiffs' argument is merely a "repackaged" version of their argument that the FFCRA and CARES Act provide a private cause of action, which other courts have rejected. *See Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2024 WL 988162, at *3 (D. Conn. Mar. 7, 2024) ("*Murphy* KAD II") (rejecting Plaintiffs' current argument, framed as follows: "Plaintiffs assert that the [FFCRA] and the [CARES Act], in combination, give Plaintiffs standing under ERISA because they effectively amended ERISA and/or any ERISA plan to provide for such claims."), *aff'd*, 120 F.4th at 1113 (rejecting Plaintiffs' original argument that the FFCRA and CARES Act provide a private right of action). Plaintiffs' latest twice-rejected variation is "simply an attempted end run" around prior court decisions that the FFCRA and CARES Act do not confer Plaintiffs standing. *See Murphy* KAD II, 2024 WL 988162, at *3; *Murphy Med. Assocs., LLC v. Cigna Health and Life Insur. Co.*, No. 3:20-CV-1675 (VAB), 2025 WL 2022056, at *6 (D. Conn. July 18, 2025) ("*Murphy* VAB").

Plaintiffs attempt to revive this argument by suggesting that because the Second Circuit "was not presented with the Murphy Practice's status as a plan beneficiary," its ruling that a valid contractual assignment is necessary is inapplicable here. Pls.' Opp'n at 10 n.3. Setting aside the fact that Plaintiffs' alleged status as a plan beneficiary *was* presented to Judge Dooley and Judge Bolden when both rejected the same argument made here,[3] this is a distinction without a difference. At bottom, Plaintiffs' argument is that the FFCRA and CARES Act have eliminated ERISA's assignment requirement, and have effectively made Plaintiffs beneficiaries of their patients'

---

[3] *See Murphy* KAD II, Am. Compl., ECF No. 43 ¶ 117 ("Moreover, the FFCRA and the CARES Act, by directing all plans, including ERISA plans, not just to cover COVID-19 testing and related services, but to pay providers certain amounts for COVID-19 testing and related services provided to covered persons, have obviated the need for a provider to obtain a specific assignment of ERISA benefits from an ERISA beneficiary to be entitled to seek reimbursement from the plan for such testing and related services, or to be entitled to bring an action under ERISA for reimbursement or injunctive relief."); *Murphy* VAB, 2025 WL 2022056, at *6 ("Plaintiffs argue that a valid assignment is not required for it to recover under the plan because the FFCRA and CARES Act require Defendants to reimburse providers, like Plaintiffs, directly for COVID-19 testing and related services.")

ERISA-governed plans. But the Second Circuit has made clear that courts should not "lightly infer congressional intent to override ERISA's standing requirements." *Murphy Med.*, 120 F.4th at 1113. Thus, Plaintiffs' argument fails.

Perhaps anticipating this conclusion, Plaintiffs argue in the alternative that the assignment language each patient was required to execute before treatment is sufficient to confer ERISA standing on all Plaintiffs. Assuming without deciding that each executed assignment was valid, Plaintiffs' alternative argument fails as to Plaintiffs MMA and Dr. Murphy, because the assignment language applies only to Plaintiff DMSOG—not to any other Plaintiffs.

Plaintiffs must allege "specific assignment language" to survive a motion to dismiss, because "[n]ot all ERISA assignments convey the same rights." *Abira Med. Lab'ys, LLC*, *v. Cigna Health and Life Insur. Co.*, No. 3:23-CV-830 (VAB), 2024 WL 4349052, at *13 (D. Conn. Sept. 30, 2024). For instance, "an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty." *Id.* (quoting *Rojas*, 793 F.3d at 258). Accordingly, Plaintiffs lack standing to bring an action pursuant to ERISA if they fail to plead facts sufficient to determine what specific rights the insured assigned. *Id.* ("Because [plaintiff] fails to allege the actual language of the assignment in their Complaint, they fail to allege standing sufficient to permit their ERISA claims"); *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 3:22-CV-00064 (KAD), 2023 WL 2631811, at *5–6 n.6 (D. Conn. Mar. 24, 2023) ("*Murphy* KAD I").

The assignment language Plaintiffs cite conveys rights solely to DMSOG and non-party "NSMA." The language purports to assign "all money to which [enrollee is] entitled for medical expenses related to the services performed from time to time by DMSOG/NSMA, but not to exceed [enrollees'] indebtedness to DMSOG/NSMA." Sample Assignments at 1–10. This language "can

be interpreted to demonstrate an intent to assign any right to payment that the patient may have under her insurance to DMSOG and NSMA." *Murphy* VAB, 2025 WL 2022056, at \*7. Although Plaintiffs have not provided the actual names of the patients who executed these assignments, they have represented that each patient signed similar stock assignment language. Am. Compl. ¶¶ 96, 99. Thus, the language is sufficient to find DMSOG (and non-party NSMA) have plausibly been conveyed rights to payment for the patients covered by this suit. *See Murphy* VAB, 2025 WL 2022056, at \*7; *Murphy Med. Assocs., LLC v. Cigna Health and Life Ins. Co.*, No. 20-CV-1675 (JBA), 2022 WL 743088, at \*7 (D. Conn. Mar. 11, 2022), *reconsideration granted on other grounds*, 2022 WL 10560321 (D. Conn. Oct. 18, 2022); *see also Rojas*, 793 F.3d at 258 (recognizing that a patient may assign a right to payment to a healthcare provider).

But the assignment language cannot be read to confer standing on Plaintiffs MMA or Dr. Murphy. By its plain terms, the assignments convey rights of payment to DMSOG and non-party NSMA. Thus, only DMSOG would have standing to assert patients' right to payment in this suit, for healthcare services it performed. *See Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 329 (2d Cir. 2011) (noting the narrow ERISA standing exception for "healthcare providers to whom a beneficiary has assigned his claim in exchange for health care"). And it is clear that DMSOG did not provide all of the medical services at issue in this litigation. *See, e.g.*, EmblemHealth Claims Tracker at 1–11 (identifying other providers besides DMSOG as having performed the services listed).

Plaintiffs contend that, even if a "different Murphy Practice entity . . . may have billed for (or even provided) the COVID-19 testing and related services at issue," remaining Plaintiffs MMA and Dr. Murphy should be considered assignees, as well. Pls.' Opp'n at 11. In support, they attach to their opposition an affidavit by Dr. Murphy, alleging that he "was in the midst of transitioning

[his] practice organization and structure from one which . . . maintained separate legal entities for each practice location to a single, umbrella entity[.]"  Dr. Murphy Aff. ¶ 5.  But, on a motion to dismiss, the Court cannot consider Dr. Murphy's affidavit without converting Defendants' motion to dismiss into a Rule 56 summary judgment motion, as the affidavit is a matter outside of the pleadings and is not incorporated by reference into the amended complaint.  *See* Fed. R. Civ. P. 12(d); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (on a Rule 12(b)(6) motion, a Court is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference.").  It is well-established that "[f]ederal courts have . . . complete discretion in determining whether to convert [a] motion [to dismiss] to one for summary judgment." *Carione v. U.S.*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (quoting 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc., Civil, § 1366 (3d ed. 2004)).  Here, as no party has requested that the Court convert Defendants' motion into one for summary judgment, and as relatively little, if any, factual development has taken place in this action, *see* Order, ECF No. 57 (staying discovery pending a ruling on Defendants' motion to dismiss), the Court declines to convert the motion into one made under Rule 56.  Instead, it will disregard Dr. Muphy's affidavit, as permitted by Rule 12(d).

Without Dr. Murphy's affidavit, the Court is left only with Plaintiffs' conclusory assertion that the assignment confers standing on parties other than DMSOG. Pls.' Opp'n at 11.  But, given that the standing exception for ERISA claims is a "narrow" one, *see McCulloch*, 857 F.3d at 146, and that conveying a grant of standing must be "in exchange for health care," *see Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir.2001), the Court cannot accept Plaintiffs' position.  Thus, the Court finds that only Plaintiff DMSOG has plausibly alleged ERISA standing based on the

assignment provision language provided.  Defendants' motion to dismiss Count One is therefore granted as to Plaintiffs MMA and Dr. Murphy.

### 2.  Substantive ERISA Claim

Plaintiffs[4] assert that, having been conveyed standing to pursue their patients' claims, they have also sufficiently alleged plausible claims for denial of benefits under ERISA.  Because Plaintiffs have corrected few, if any, of the deficiencies previously identified in the Court's ruling on Defendants' motion to dismiss Plaintiffs' initial complaint, the Court grants Defendants' motion to dismiss as to Plaintiffs' substantive ERISA claims.

"To state a claim for relief under [ERISA], a plaintiff must show that '(1) the plan is covered by ERISA, (2) plaintiff is a participant or beneficiary of the plan, and (3) plaintiff was wrongfully denied [benefits] owed under the plan.'"  *Curtis v. Aetna Life Ins. Co.,* No. 3:19-CV-1579 (MPS), 2021 WL 1056785, at *9 (D. Conn. Mar. 18, 2021) (citation and some internal quotation marks omitted), *amended*, 2022 WL 788490 (D. Conn. Mar. 15, 2022).

This Court previously noted that "Plaintiffs fail to identify the plans at issue, to allege facts to establish that ERISA governs the plans, to demonstrate that the plans cover the claims benefits sought, and to state why denial was wrongful."  MTD Ruling, 2024 WL 4388305, at *12.  Plaintiffs have not introduced through their amended complaint *any* further information about the plans at issue, whether they are covered under ERISA, or whether they encompass the treatment for which Plaintiffs seek reimbursement.  Plaintiffs do not deny this.  *See* Pls.' Opp'n at 14 (Plaintiffs amended complaint "explains in great detail why it cannot identify the exact plans at issue").  Rather, Plaintiffs assert that because the FFCRA and CARES Act mandate direct reimbursement to healthcare providers, the terms of any individual plan are irrelevant, and further that because

---

[4] While only DMSOG may proceed on any substantive ERISA claim, the Court continues to use "Plaintiffs" for consistency with the pleadings.

Plaintiffs are out-of-network providers, they do not even have the ability to access the plans at issue without the benefit of discovery. *Id.* at 10–11. Both these arguments are insufficient to overcome Defendants' motion to dismiss.

First, this Court has already rejected, at least implicitly, Plaintiffs' first argument. In their briefing on Defendants' motion to dismiss their original complaint, Plaintiffs had argued that "The Plan Terms Are Irrelevant Since the FFCRA Directs Insurance Companies To Reimburse The Provider Of COVID-19 Testing." *See* Pls.' Opp'n Defs' Mot. to Dismiss Compl., ECF No. 20 at 30. In the MTD Ruling, Judge Haight concluded that Plaintiffs had failed to allege a denial of benefit claim under ERISA because they failed to allege plan terms. *See* MTD Ruling, 2024 WL 4388305, at *12–13. By holding that Plaintiffs failed to adequately allege plan terms, Judge Haight implicitly rejected Plaintiffs' contention that the FFCRA and Cares Act obviated the need to plead such plan terms. The Court continues to adhere to the view that a plaintiff seeking payment under a plan must allege the plan terms, so that the Court may analyze whether payment is appropriate under the plan. *See, e.g.*, *N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) (affirming dismissal of claims brought by medical provider against insurer for lack of payment, where the provider "fails to identify her patients' plans or the terms of their plans").[5] And even if the FFCRA and CARES Act did require reimbursement for COVID-19

---

[5] The Court is aware of one contrary opinion in this district. *See Murphy Med. Assocs., LLC v. United Med. Res. Inc.*, No. 3:22-CV-83 (JBA), 2023 WL 2687466, at *6 (D. Conn. Mar. 29, 2023) ("*Murphy* JBA"). There, Judge Arterton held that where "the reimbursement obligation derives from the [FFCRA and the CARES Act], which effectively modified the terms of ERISA plans to provide SARS-CoV-2 tests at no cost to a patient," the "specific plan language or the individual assignor-beneficiaries is not required." Respectfully, this Court parts ways with Judge Arterton on this point. The Second Circuit has made clear that the FFCRA and CARES Act do not independently grant standing to assert an ERISA claim, *see Murphy*, 120 F.4th at 1113; instead, standing comes from a medical provider stepping into the shoes of a patient who has assigned its right to any claim to the medical provider. If a medical provider thus has standing only to pursue an ERISA claim through whatever rights an enrollee's plan provides, then surely the specific terms of the plan—i.e., whether it even allows a right of assignment or what administrative remedies must be exhausted before pursuing litigation—are necessary questions the Court must address when ruling on Plaintiffs' claims. *See also Murphy* JBA, 2023 WL 2687466, at *6 (despite holding that the individual plan terms were irrelevant, proceeding to analyze whether administrative exhaustion was futile). As such, regardless of any obligation for direct

testing, *see* Am. Compl. ¶ 24–28, Plaintiffs themselves allege that they purchased and used their BioFire machine to test patients' swabs for *twenty-one* other respiratory pathogens besides SARS-CoV-2, the virus that causes COVID-19, *id.* ¶ 41. Plaintiffs have provided no authority to suggest that the FFCRA and CARES Acts authorized reimbursement for tests beyond those related to determining whether a patient had COVID-19.

Alternatively, Plaintiffs allege that they simply are unable to provide any more information about the specific plans at issue because Defendants "have chosen to play hide the ball." Pls.' Opp'n at 14. Plaintiffs' amended complaint asserts that they receive information about a patient's specific healthcare plan either directly from the patient, or via the patient's insurance card, but that often the insurance cards do not contain sufficient information to determine what specific plan applies. Am. Compl. ¶¶ 55–60. Thus, Plaintiffs requested this information from Defendants prior to filing their amended complaint, but Defendants allegedly "refused" to provide any information. *Id.* ¶ 61; Email Commc'ns at 1. However, Defendants' letter makes clear that Plaintiffs made a request for plan information for *thousands* of claims a mere ten days before their amended complaint was due. Email Commc'ns at 1. Combined with the fact that Plaintiffs did not attempt to include any plan information they *did* have in their amended complaint, Plaintiffs' failure to include sufficient plan information appears to be a problem of their own creation. Thus, because Plaintiffs must still provide sufficient details about the plans at issue for their ERISA claim but have again failed to do so, the Court finds that Plaintiffs have not plausibly alleged their claims for denial of ERISA benefits.

---

reimbursement the FFCRA and CARES Act may have imposed, the terms of any individual plan are still necessary for the Court's analysis.

### 3. Exhaustion

Even if Plaintiffs had alleged plausible claims for denial of ERISA benefits, because they have failed to demonstrate they exhausted administrative remedies before proceeding with this action—and have not met the high bar for futility—Defendants' motion to dismiss is granted as to exhaustion as well.

In the Second Circuit, there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) (quoting *Alfarone v. Bernie Wolff Constr. Corp.*, 788 F.2d 76, 79 (2d Cir. 1986), *cert. denied*, 479 U.S. 915 (1986)). "The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013). "Where a plaintiff fails to exhaust administrative remedies before filing an action in federal court, an ERISA cause of action must be dismissed." *Murphy* KAD I, 2023 WL 2631811, at *4 (citing *Neurological Surgery P.C. v. Aetna Health Inc.*, 511 F. Supp. 3d 267, 293 (E.D.N.Y. 2011)). "[E]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Kennedy*, 989 F.2d at 594; *see also* 29 U.S.C. §1133(2) (a plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim").

Courts will not, however, require exhaustion where such exhaustion would be "futile." *Kennedy*, 989 F.2d at 594. The futility exception "is not applied lightly." *Neurological Surgery, P.C.* v. *Northrop Grumman Sys. Corp.*, No. 2:15-CV-4191 (DRH) (AKT), 2017 WL 389098, at *6 (E.D.N.Y. Jan. 26, 2017) (emphasis removed) (quoting *Zupa v. Gen. Elec. Co.*, No. 3:16-CV-217 (CSH), 2016 WL 3976544, at *2 (D. Conn. July 22, 2016)). For instance, the Second Circuit has found futility excusing exhaustion where a provider had informed Plaintiff that "'he had

exhausted any administrative remedies available,'" and the same request had recently been denied under a more lenient standard. *Ruderman v. Liberty Mut. Grp., Inc.*, No. 21-817, 2022 WL 244086, at *2 (2d Cir. Jan. 27, 2022) (summary order) (quoting *Paese v. Hartford Life and Accident Ins. Co.*, 449 F.3d 435, 449 (2d Cir. 2006)).

Here, Plaintiffs have not included any plan provisions for the Court to examine, despite this Court's previous ruling that bald, conclusory assertions are insufficient to assert exhaustion. *See* MTD Ruling, 2024 WL 4388305, at *13–14. The Court's prior decision was clear: "Plaintiffs must allege 'fundamental details,' for example, clearly pleading 'the key dates ([of their] claim, the insurer's denial, [their] appeal, etc.) as well as the appeals procedure followed.'" *Id.* at 14 (quoting *Neurological Surgery, P.*C., 511 F. Supp. 3d at 295). Yet Plaintiffs have failed to include any such detail in their amended complaint, stating only in conclusory fashion that "[i]n all cases, Plaintiffs' submitted appeals of Defendants' adjudication of the medical reimbursement claims at issue were either denied by Defendants, or Plaintiffs never received a response to their appeal." Am. Compl. ¶ 138; *see also id.* ¶¶ 131, 136–37. As such, Plaintiffs have failed to demonstrate exhaustion of their administrative remedies. *See Murphy Med. Assocs, LLC v. 1199SEIU Nat'l Benefit Fund*, No. 24-1880-cv, 2025 WL 763392, at *2 (2d Cir. Mar. 11, 2025) (summary order) (holding that a "conclusory statement" that the plaintiffs "appealed every claim submitted to the Fund, which were summarily denied," failed to meet the pleading burden for exhaustion (internal quotation omitted)).

Plaintiffs contend they are excused altogether from any exhaustion requirement because pursuit of their administrative remedies would have been futile given Defendants' "persistent, blanket refusal to reimburse for the COVID-19 testing and related services at issue." Pls.' Opp'n at 17; *see also* Am. Compl. ¶¶ 141, 146. Merely gesticulating to distinct actions on distinct facts,

however, without providing any specific details as to even one such refusal, is insufficient to show futility. *See 1199SEIU Nat'l Benefit Fund*, 2025 WL 763392, at \*3 (rejecting allegation of blanket denials of appeals as "conclusory allegations of futility" unsupported by pleaded facts); *Murphy* KAD II, 2024 WL 988162, at \*3 (citing *Kesselman v. The Rawlings Co.*, 668 F. Supp. 2d 604, 608–09 (S.D.N.Y. 2009)). Nor is the burden of pursuing administrative appeals a reason to excuse the exhaustion requirement. *See* Am. Compl. ¶ 146 ("The volume of these denials are such that it was reasonable of Plaintiffs to conclude that further pursuit of administrative remedies would be futile."). Thus, because Plaintiffs have not sufficiently alleged the exhaustion of their administrative remedies nor sufficiently alleged that exhaustion would be futile, their ERISA claim must be dismissed.

B.    Count Two:  State Law Claims

Plaintiffs also bring a claim of state law breach of contract against Defendants for failure to pay medical reimbursement claims pursuant to plans administered or sponsored by Defendants but not governed by ERISA. *See* Am. Compl. ¶¶ 162–175. The parties spend relatively little time discussing this claim but it, too, must be dismissed.

The elements of a breach of contract claim under Connecticut law are the formation of an agreement; performance by one party; breach of the agreement by the other party; and damages. *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 311 Conn. 282, 291 (2014). Here, Plaintiffs have failed to allege any contract exists directly between them and any of the Defendants. And without *any* allegations concerning the terms of the non-ERISA health plans that Plaintiffs claim were breached, the Court is unable to conclude that Plaintiffs can enforce any such contractual rights as assignees, third-party beneficiaries, or otherwise. Nor can the Court conclude that any particular contract terms were breached. Thus, the breach of contract claim is dismissed. *See Murphy* KAD I, 2023 WL 2631798, at \*9.

C.  Leave to Amend

Finally, Plaintiffs' amended complaint is dismissed without leave to amend, as Plaintiffs have failed to correct the deficiencies previously identified, despite being granted the opportunity to do so.

"It is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  However, courts may deny subsequent requests to replead.  Courts may deny leave for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  It is within the "sound discretion" of the district court to grant or deny leave to amend.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d at 200.

This Court previously granted Plaintiffs leave to replead.  *See* MTD Ruling, 2024 WL 4388305, at *17.  Having been now presented a second time with substantially similar pleadings and arguments, the Court finds that Plaintiffs' failure to cure its pleading deficiencies merits dismissal of their amended complaint without leave to further replead, as other courts in this Circuit have similarly done.  *See Murphy* KAD II, 2024 WL 988162, at *3 (dismissing amended complaint with prejudice), *aff'd*, 120 F.4th at 1114; *Murphy Med. Assocs., LLC v. 1199SEIU Nat'l Benefit Fund*, No. 23 Civ. 6237 (DEH), 2024 WL 2978306, at *6 (S.D.N.Y. June 12, 2024) (denying leave to amend complaint for a second time), *aff'd*, 2025 WL 763392.  Nor have Plaintiffs requested leave to amend or submitted a proposed second amended complaint.  Thus, the Court does not grant leave to amend.  *See Yale Univ.*, 120 F.4th at 1114.

**IV.    CONCLUSION**

For the reasons described herein, Defendants' motion to dismiss is GRANTED.  Plaintiffs' amended complaint is dismissed in full without leave to amend.  The Clerk is directed to close this action.

**SO ORDERED** at Hartford, Connecticut, this 25th day of November, 2025.

        */s/ Sarala V. Nagala*
        SARALA V. NAGALA
        UNITED STATES DISTRICT JUDGE